# UNITED STATES DISTRICT COURT
## DISTRICT COURT

| | |
|---|---|
| JOHN STANKO,<br>      Plaintiff, | CIVIL ACTION NO.<br>3:01-CV-597(MRK) |
| v. | |
| SIMSBURY BOARD OF EDUCATION and<br>DR. JOSEPH TOWNSLEY,<br>      Defendants. | APRIL 28, 2004 |

## THE PARTIES' PROPOSED JURY INSTRUCTIONS

I.  **PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**

    **1.**  **Introduction to Plaintiff's §1983 Claims**

The Plaintiff, John Stanko, has brought two claims for violations of his rights under federal law. These claims are brought under a statute that is usually referred to as Section 1983. Section 1983 is a federal civil rights statute that provides that a person may sue any person who, under color of state law, deprives him of any of the rights, privileges or immunities secured or protected by the Constitution of the United States. These rights, privileges and immunities include the right to free speech under the First Amendment; they also include the right not to have one's good name taken

away by the government without due process. I will be referring to the first of these claims as the Plaintiff's First Amendment claim; later on in these instructions I will be telling you about the second of these claims, and I will refer to the second as the Plaintiff's claim for loss of his liberty interest in his good name, or simply his liberty interest claim.

### 2.    §1983 – First Amendment Claim

To establish a First Amendment claim under Section 1983, the Plaintiff must establish by a preponderance of the evidence that he suffered an adverse action taken by a person acting under color of state law, that the adverse action deprived the Plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States, and that the Defendants' conduct was the proximate cause of the injuries and damages suffered by the Plaintiff.[1]

In this case, the parties agree that in February 1998, John Stanko resigned from his position as a teacher with the Simsbury Board of Education. The circumstances of

---

[1] Lewis v. Cowen, Lange & Hickey, No. 2:91-CV-432 (TPS), *Charge of the Jury*, 1996, p. 53; Lugar v. Edmonson Oil Co., 457 U.S. 922, 102 S. Ct. 2744 (1982); Paratt v. Taylor, 451 U.S. 527, 101 S. Ct. 1908 (1981); Maine v. Thiboutot, 448 U.S. 1, 100 S. Ct. 2502 (1980); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473 (1961); Gierlinger v. Gleason, 160 F.3d 858, 872 (2nd Cr. 1998); Bernheim v. Litt,79 F.3d. 318, 324 (2nd Cir. 1996); Marshall v. Switzer, 10 F. 3d 925 (2nd Cir. 1993); Jeffries v. Harleston, 21 F.3d. 1238, 1245, (2nd Cir. 1994), vacated and remanded on other grounds, 513 U.S. 996, 115 S. Ct. 502, (1994)(memorandum); decided 52 F.3d. 9 (2nd Cir. 1995); Frank v. Relin, 1 F.3d. 1317, 1328-9 (2nd Cir. 1993) cert. denied 510 U.S 1012, 114 S. Ct. 604 (1993).

2

Stanko's departure are therefore not at issue here. The adverse action alleged by John Stanko is that the Defendants made false and derogatory statements about him after his resignation to parties inquiring about Stanko's employment. I instruct you as a matter of law that such statements, if made, constituted an adverse action. I further instruct you as a matter of law that if you find that Dr. Townsley made such statements in response to inquiries about Stanko's employment, such statements were made under color of state law, inasmuch as Dr. Townsley was speaking in his capacity as Superintendent of Schools and on behalf of the Simsbury Board of Education.

At issue in this case is whether the Defendants' statements about the Plaintiff were motivated by the Plaintiff's exercise of rights protected by the First Amendment, and whether the Defendants were the proximate cause of the Plaintiff's damages.

John Stanko claims that the statements made by Dr. Townsley were in retaliation for Stanko's exercise of his right to free speech under the First Amendment of the United States Constitution. The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." This constitutional provision applies to state officials acting under color of state law. This includes officials of a town government or agency, such as a board of education.

A public employee does not surrender the right of free speech when he or she accepts government employment and he or she is entitled to be free from employment

3

decisions made in retaliation for engaging in speech protected by the First Amendment. However, not all speech is granted the same amount of protection. As a public employee, for instance, you do not have a right to insist upon talking about personal matters on work time. The Courts have determined that speech by a public employee is generally protected by the First Amendment only if it addresses a matter of public concern. Therefore, the Plaintiff must prove that he was engaged in speech which is protected by the First Amendment because it involved matters of public concern, and not merely matters of private interest.

An employee's speech addresses a matter of public concern when it addresses a social, political, or community concern. In this case, the Plaintiff asserts that he engaged in three instances of protected speech. First, the Plaintiff opposed the Defendants' decision to order that production of the play "Shadow Box" be halted, and made his opposition known, including to members of the press. Second, while engaged in a teaching exercise in class, the Plaintiff used the word "nigger" as a means of inviting discussion about the power of words. Third, the Plaintiff wrote on the blackboard of his classroom the words "Bastards Suck," which he identified to students in the class as a "poem" as part of an exercise about art and censorship. Whether these statements by the Plaintiff involved matters of public concern is a question of law for me to determine, not one of fact for you to decide. These statements involve the

4

expression of ideas within the classroom and outside the classroom about issues such as art, culture, and censorship. Therefore, I instruct you as a matter of law that the Plaintiff's statements are speech which involves matters of public concern.

Therefore, you may now proceed to the next step of the analysis and determine whether the Defendants retaliated against John Stanko for these statements on matters of public concern. The retaliation that Stanko alleges in this case is the negative or derogatory comments made about him by Dr. Townsley in response to inquiries-from third parties about Stanko regarding his suitability for employment. In order for the Plaintiff to prevail on his claim you must find that his First Amendment Speech was a motivating factor in the Defendants' decision to make these negative or derogatory comments. That is, you must find that the Plaintiff's speech made a substantial difference or influenced the Defendants' decision to make these negative or derogatory comments. This means that the Plaintiff does not have to prove that his speech was the only reason for the Defendants' decision. It is enough if he proves that his speech activities were a substantial consideration that made a difference in or influenced the Defendants' decision.

In making your decision, you do not have to determine whether Mr. Stanko was right in everything that he said. The right of free speech is not limited to statements that can be proven true or to statements with which we agree. This case is not about

5

whether Mr. Stanko was right in what he said; this case is about his right to say it. The question you must answer is whether the Plaintiff has proven by a preponderance of the evidence that his speech was a substantial or motivating factor in the Defendant's decision to make negative or derogatory comments about him to potential employers.[2]

### 3.    Defamation Claim

The Plaintiff's next count is a claim of defamation. Defamation is a violation of an individual's right to a good reputation. The value of reputation is recognized by law and the law provides damages for an injury to an individual's reputation. When the damaging statements regarding a person's reputation are made in writing, that is called libel. When they are made orally, that is called slander. To prove his claim of defamation, the Plaintiff must show that the Defendants made false statements about him, that these statements harmed him and that the Defendants were not privileged to make such statements.

---

2 Rankin v. McPherson, 483 U.S. 378, 383-384, 107 S. Ct. 2891 (1987); Connick v. Meyers, 461 U.S. 138, 103 S. Ct. 1684 (1983);Frank v. Relin, 1 F. 3d 1317, 1328 (2nd Cir. 1993), cert denied, 510 U.S. 1012, 114 S. Ct. 604 (1993); Bernheim v. Litt, 79 F. 3d 318, 324 (2nd Cir. 1996); Bieluch v. Sullivan, 999 F.2d 666, 670 (2nd Cir. 1993), cert denied, 510 U.S. 1094, 114 S. Ct. 926 (1994); Mt. Healthy City Dist. Board of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L. Ed. 2d 471 (1977); Givhan v. Western Line Consolidated School Dist., 439 U.S. 410, 99 S.Ct. 693, 50 L. Ed. 2d 619 (1979); Jeffries v. Harleston, 21 F.3d. 1238, 1245, (2nd Cir. 1994), vacated and remanded on other grounds, 513 U.S. 996, 115 S. Ct. 502, (1994)(memorandum); decided 52 F.3d. 9 (1995).

While a plaintiff must generally prove the damage he has sustained to his reputation, statements which falsely accuse an individual of dishonesty, question their integrity or involve charges of neglect or misconduct in their professional or business duties are considered libel or slander per se. The law presumes that such statements cause harm without the need for additional proof from the Plaintiff.

If you find that the statements made by the Defendants about Mr. Stanko involve charges of misconduct in the performance of the Plaintiff's professional duties, you must find injury to Mr. Stanko's reputation. If you find that a person of ordinary understanding would not find that the Defendants had been accusing the Plaintiff of misconduct in the performance of his professional duties, then you need go no further in your consideration of this legal claim. In deciding this issue, the question is what meaning would a person of common and reasonable understanding have given these statements in view of their context.

Truth is a defense to any claim of defamation. If by a fair preponderance of the evidence, the Defendants have proven to you that the statements made by them were, at the time they made them, substantially true, you must find for the Defendants as to this claim. However, it is not enough that the Defendants, in making the statements, believed them to be true, or even that they had reasonable grounds for such a belief.

7

The issue for you to decide is whether the Defendants have proven to you that their statements were, in all respects, substantially true.[3]

*[The Plaintiff anticipates that the Defendants will seek an instruction on "actual malice" on the theory that the Plaintiff was a school teacher, and therefore a public figure or public official for defamation purposes. See, Kelley v. Bonney, 221 Conn. 549, 579-80 (1992); New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964). The Plaintiff asserts that such an instruction is not needed because he was not a public figure at the time of the Defendants' defamatory statements, and because the context of the statements – relating to personnel matters rather than to public discussion – is inconsistent with the objectives of the Connecticut Supreme Court in Kelley v. Bonney, suppra, in designating school teachers as public officials for purposes of claims of defamation. Therefore no "actual malice" instruction is needed. Should the Court disagree, however, the Plaintiff provides the following as a proposed instruction on this issue:*

*Under Connecticut law, because the Plaintiff was a schoolteacher, he is considered a "public figure" for purposes of the law of defamation. This means that in order to find that the Defendants defamed the Plaintiff, you must be satisfied that the Plaintiff has shown by a preponderance of the evidence that the Defendants acted with actual malice when they spoke about him. Actual malice is a legal term and in this context simply means knowledge that a statement was false or a reckless disregard for whether the statement was false. Therefore, I instruct you that in order for you to find that the Defendants defamed the Plaintiff, you must be satisfied that Joseph Townsley*

---

[3] Goodrich v. Waterbury Republican American, 188 Conn. 107, 498 A.2d 1317 (1982); Wright & Ankerman, Connecticut Jury Instructions (1993) §467 at 732.

8

*either knew that the statements that he was making about John Stanko were false, or he was reckless with regard to whether the statements were false.*[4]

### 4.    §1983 – Liberty Interest Claim

The Fifth Amendment to the United States Constitution provides that a person may not be deprived of his or her life, liberty, or property by the government without due process.  Section 1983 is the law that enforces a person's right not to be deprived of life, liberty or property without due process.  We say that a person is deprived of a liberty interest where his good name, reputation, honor, or integrity is at stake because of what the government is doing to him.

In the case at hand, the Plaintiff, John Stanko, claims that the Defendants, the Simsbury Board of Education and Dr. Joseph Townsley, deprived him of a liberty interest in his good name when Dr. Townsley responded to inquiries about Stanko from people who were checking Stanko's references for employment purposes.

For John Stanko to prevail on his claim that he was deprived of a constitutionally-protected liberty interest in violation of Section 1983, he must demonstrate 1) that he possessed such an interest; 2) that the Defendants made statements that had the effect of depriving him of that interest; 3) that the deprivation occurred without due process of

---

[4] Kelley v. Bonney, 221 Conn. 549, 581 (1992); New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964); Holbrook v. Casazza, 204 Conn. 336, 342 (1987), cert. denied, 484 U.S. 1006 (1988).

9

law; 4) that the statements constituted state action; and 5) that the statements were false.

In considering this claim, the first element to be considered is whether the Plaintiff possessed a liberty interest in his good name. In the matter at hand, there is evidence that John Stanko taught English in the Simsbury public school system for twenty-nine years and that he was regarded as a competent teaching professional. Therefore, I instruct you as a matter of law that this element of the Plaintiff's claim – the question of whether he possessed a liberty interest in his good name – has been satisfied.

The next element to consider is whether the statements made by the Defendants were of the sort that would deprive the Plaintiff of his liberty interest in his good name. Not every government allegation of professional incompetence implicates a liberty interest in every instance. However, allegations of professional incompetence are actionable when they impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession.

Thus, the question is whether the statements made by Dr. Joseph Townsley on behalf of the Simsbury Board of Education regarding John Stanko were of the sort that not only alleged professional incompetence, but also that the statements were of the

10

sort that would place a significant roadblock in the way of John Stanko's ability to obtain other employment as a teacher.  There is evidence that the statements made by Dr. Townsley included allegations that John Stanko called a student a nigger, that he had also engaged in other, undisclosed behaviors, and that these behaviors had caused Stanko to take the unusual step of resigning mid-year.  I instruct you as a matter of law that these allegations are of the type that would significantly interfere with a person's ability to work in the profession of public school teacher.

The third element of the liberty interest claim is the question whether the Defendants made the statements regarding the Plaintiff without according him some opportunity to rebut those statements.  This is an element of a liberty interest claim because the Constitution requires that an individual be provided with due process before taking an action to interfere with his life, liberty or property.  Due process can take many forms, and an individual is not necessarily entitled to a full or formal hearing before the government can speak or act.  In this case, however, the statements that the Plaintiff alleges were made by the Defendants were made after he had resigned his position and in a manner that provided him with no opportunity to respond to or rebut the statements.  Therefore as a matter of law I instruct you that the Plaintiff did not receive due process.

11

Because the inquiries were made to Dr. Townsley in his capacity as Superintendent of Schools for the Simsbury Board of Education, I further instruct you that as a matter of law Dr. Townsley's responses to those inquiries constituted state action – that is to say, that it was, in effect, the government that was making these statements.

Now, I have already instructed you about the elements of a claim for defamation and your duty to find, based on all of the evidence, whether the allegations made by Dr. Townsley against John Stanko were false. You will need to make the same finding here, in deciding John Stanko's liberty interest claim.5

### 5.    Tortious Interference With a Business Relationship

The Plaintiff also seeks to recover damages from the Defendants under the cause of action called tortious interference with a prospective business relationship. In order to succeed in this action, the Plaintiff must prove four elements: (1) the existence of a prospective business relationship between himself and one or more employers; (2) that the Defendants had knowledge of that prospective relationship; (3) that the Defendants had an intent to interfere with that prospective relationship; and (4) that the

---

5 Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971); Valmonte v. Bane, 18 F.3d 992, 998 (2nd Cir. 1994); Donato v. Plainview Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 630 (1996); Huntley v. Community Sch. Bd., 543 F.2d 979, 985 (2d Cir. 1976), cert. denied, 430 U.S. 929 (1977).

12

Plaintiff suffered losses as a result of the Defendant's interference with the prospective relationship.[6]

In order to recover for damages for this cause of action, the Plaintiff must prove that the Defendants intentionally and improperly interfered with his prospective employment relationships. That is, the Plaintiff must show that Dr. Townsley, in communicating with John Stanko's prospective employers on behalf of the Simsbury Board of Education, acted with an improper personal motive. Whether the Defendants acted with an improper motive or not is a question of fact, which you must determine based on all of the surrounding circumstances.[7]

If you determine that the Defendants acted with improper motive and that the Plaintiff has shown that he suffered actual economic losses as a result of that interference, you must find for the Plaintiff. If, however, you do not find that Dr. Townsley acted with improper motive or that the Plaintiff cannot show he suffered any

---

[6] Blake v. Levy, 191 Conn. 257, 261-262, 464 A.2d 52 (1983); 4 Restatement (Second) of Torts § 766, comment s, §§ 767-768 (1979); Robert S. Weiss Associates, Inc. v. Wiederlight, 208 Conn. 525, 536, 546 A.2d 216 (1988); Herman v. Endriss, 187 Conn. 374, 376-77, 446 A.2d 9 (1982); Hart, Nininger & Campbell Associates, Inc. v. Rogers, 16 Conn.App. 619, 629, 548 A.2d 756 (1988); Meaney v. Conn. Hosp. Assoc., 1996 WL 368205 (Conn.Super.), *6; Espinosa v. Conn. College, 1994 WL 320222 (Conn.Super.), *5-6; Murray v. Bridgeport, 40 Conn.Supp. 56, 60-61, 480 A.2d 610, 613 (1984); Bennet v. Beiersdorf, Inc., 889 F.Supp. 46, 51-52 (1995).

[7] Bennett v. Beiersdorf, Inc., 889 F.2d 46, 52 (D.Conn. 1995); Malik v. Carrier, Memorandum of Decision on Defendants' Renewed Motion for Summary Judgment, May 23, 1997, Slip. Op. at 14; Espinosa, 1994 WL 320222, *5-6.

13

economic losses even if Dr. Townsley did act from improper motives, then you must find for the Defendant.[8]

### 6.    Breach of Contract Claim and Counterclaim

It is undisputed that the Plaintiff, John Stanko, and the Defendant, Simsbury Board of Education, entered into a contract at the time of Mr. Stanko's resignation from his teaching position at Simsbury High School, and that the contract is in writing in the form in which it has been entered into evidence in this case.

Mr. Stanko claims that Dr. Townsley, acting on behalf of the Simsbury Board of Education, violated this contract by making certain statements about Mr. Stanko to parties who called to check on Mr. Stanko's employment references. The Simsbury Board of Education, for its part, has brought a counterclaim against Mr. Stanko claiming that he has violated the parties' contract by bringing this lawsuit. It is for you to determine whether one or the other of these parties has breached its contractual obligations to the other.

A contract is an agreement between two or more parties to do or not to do something. A contract may be stated in words either oral or written. It is sometimes

---

[8] Hi-Ho Tower, Inc. v. Com-Tronics Inc. 255 Conn. 20 , 29-31 (2000); Herman v. Endriss, 187 Conn. at 377; Hart, Nininger & Campbell Assoc., Inc., 16 Conn.App. at 629; Holt v. Home Depot, USA, Inc., Docket No. 3:00CV1578 (D.Conn., Chatigny, J., 2003).

14

said that a contract is formed when the parties reach a "meeting of the minds." However, an actual meeting of the minds is not required to form a contract. Many contract disputes arise because people attach different meanings to the same words or conduct. In such cases, the law relies on an objective test to determine the parties' intentions, rather than a subjective one.

Applying this objective test, a contract is formed when the words and conduct of the parties, objectively viewed, indicate that they have agreed to the terms of the alleged contract. Under this test, if a party engages in conduct that makes it appear to a reasonable person that he intends to undertake contractual obligations to the other party, when in fact he does not intend to be contractually bound, his apparent intent may be sufficient to create a contract.

Here, the terms of the written contract between the parties include an apparent agreement that any inquires from Mr. Stanko's potential employers would be referred to Dr. Townsley, in his capacity of Superintendent of Schools for the Simsbury Board of Education, and that Mr. Stanko would waive, or give up, any claims that he might have "arising out of the Superintendent's good faith responses" to any inquiries regarding Mr. Stanko's employment. The written contract also includes, by incorporation, a letter of reference for Mr. Stanko, which Dr. Townsley has signed.

15

In common usage, the term "good faith" has a well defined and generally understood meaning, being ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation. It has also been defined as meaning an honest intention to abstain from taking unfair advantage of another through the use of technicalities in the law. In considering whether an individual is acting in good faith, you should take into account the individual's state of mind, actual knowledge, and motives.[9]

Using these definitions, and considering all of the evidence available to you, you must decide as a matter of fact whether Dr. Townsley's statements were made in good faith. If you find that Dr. Townsley was speaking in good faith, then you must find for the Defendants; if you find that Dr. Townsley was not speaking in good faith, then you must find for the Plaintiff on this breach of contract claim.[10]

## 7. Damages

If the Plaintiff persuades you that he is entitled to recover against the Defendants, you will have to address one or more questions on the verdict form relating to damages. You should bear in mind that the Plaintiff has the burden of proving by a preponderance of the evidence both that he was damaged and the extent of his

---

9 Kendzierski v. Goodson 21 Conn.App. 424, 429-430 (Conn.App.,1990).
10 Holt v. Home Depot, USA, Inc., Docket No. 3:00CV1578 (D.Conn., Chatigny, J., 2003)

damages.   The amount of any damages you award must be reasonably calculated to fairly compensate him for any losses or injuries he has suffered as a result of the Defendants' wrongdoing.

You should also bear in mind that the Plaintiff is not entitled to an award of damages unless he first proves by a preponderance of the evidence that the Defendants have violated his rights as he claims.  Just because I am instructing you on the subject of damages does not mean that I think you should reach the issue of damages in your deliberations, or that you should award damages, or that I have any opinion one way or the other as to whether you should or should not award damages.

You must not construe the Defendants' presentation of evidence and argument relating to damages as an acknowledgment or admission that they are liable to the Plaintiff or that he is entitled to and award of damages.  The Defendants are obliged to address the subject of damages during the trial or lose an opportunity to do so.  You should consider the issue of damages and the evidence presented on that issue only if you first determine that the Plaintiff's rights have been violated by the Defendants as alleged in his complaint.

Please note that a person cannot recover more than once for that same injury, even if he prevails on more than one claim.  Accordingly, if you award damages to the

17

Plaintiff on more than one claim, you must be sure that the total amount you award him does not compensate him more than once for the same injury.

### 8.    Lost Wages and Benefits

Plaintiff contends that he is entitled to an award of damages to compensate him for the wages and benefits he has lost as a result of the Defendants' statements to his potential employers. If you find that the Plaintiff has proved that he is entitled to recover damages against the Defendants, you may make an award that reflects the value of the wages you find that he would have earned but for the Defendants' statements. You are permitted to determine the amount of such wages by making a fair estimate or approximation, as long as the evidence provides a reasonable basis for such an estimate or approximation.

### 9.    Emotional Distress

The Plaintiff contends that, in addition to compensation for lost wages, he is entitled to an award of damages against the Defendants for emotional distress he has suffered as a result of the Defendants' statements about him to potential employers. On all of the claims on which I have instructed you, with the exception of the breach of contract claim, If you find that the Plaintiff has proven his claim, you may award him damages for any emotional distress he has suffered as a result of the Defendants'

18

statements. This is because such damages are recoverable for conduct that constitutes a tort but not for conduct that constitutes a breach of contract.

A person injured by another's wrongful or tortious conduct is entitled to be fairly compensated for mental and emotional pain and suffering proximately caused by the wrongful conduct. And injury is proximately caused by unlawful conduct if the conduct plays a substantial part in bringing about or actually causing the injury, and the injury is either a foreseeable result or a reasonably probable consequence of the unlawful conduct. As far as money can compensate someone for injuries of this sort and their consequences, the compensation you award must be fair, just, and reasonable. In determining the amount to award, you are to be guided by your own good judgment. You should consider the nature, extent and duration of any pain and suffering you find to have been caused by Joseph Townsley's statements about John Stanko, as well as any impact any such pain and suffering had on the Plaintiff's health and enjoyment of life. Any damages you award must be fair and adequate to compensate the Plaintiff for any harm done to him as a result of the allegedly wrongful conduct, no more and no less.

### 10.   **Mitigation of Damages**

A person injured by wrongful conduct of another is not entitled to recover damages for harm he can avoid by reasonable effort after the wrongful conduct occurs.

The law refers to this as the duty to mitigate or avoid damages. If a person fails to make reasonable effort to mitigate damages, the damages he is entitled to recover are reduced accordingly so that not damages are awarded for harm he could have avoided through reasonable effort.

Under this rule, the Plaintiff had a duty to use reasonable effort to seek employment. The Defendants allege that he did not use reasonable effort to get another job and that he could have gotten another job during the time when he unreasonably failed to look for work.

The Defendants have the burden of proving, by a preponderance of the evidence, that the Plaintiff failed to mitigate his damages after his resignation from Simsbury High School. To discharge this burden the Defendants must prove, by a preponderance of the evidence, that the Plaintiff could have obtained a like job through reasonable effort, and that he unreasonably failed to do so. If the Defendants prove these things, any damages you award to the Plaintiff for lost wages must be reduced by the amount that the evidence shows he would have earned had he made such an effort.

**11.    Punitive Damages**

If you find for the Plaintiff, you must consider whether, in addition to compensatory damages, the Defendants should also be required to pay punitive damages. Punitive damages are awarded, in the discretion of the jury, to punish a

20

defendant for extreme or outrageous conduct and to deter a defendant and others from committing such conduct.

You may decide to hold the Defendants liable for punitive damages if you find that they acted maliciously or wantonly in violating the Plaintiff's rights.  An act is maliciously done if it is prompted by ill will or spite toward the injured person or by some improper motive.  An act is wanton if it is done in reckless or callous disregard of, or indifference to, the rights of the injured person.

Whether the Defendants should be required to pay punitive damages is an issue that is entrusted to your discretion; that is, if you find that the legal requirements for punitive damages are satisfied, then you may decide to hold the Defendants liable for punitive damages, or you may decide that they should not be liable for punitive damages.  It is up to you the jury.  In exercising this discretion you are required to use sound judgment and consider the evidence with care.  You must act reasonably in light of all the evidence, and without bias or prejudice.[11]

*[The defendants object to the plaintiff's instruction with respect to punitive damages.  It is well established that the plaintiff cannot maintain a claim for punitive damages against the defendants.  See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S. Ct. 2748 (1981).]*

---

[11] Holt v. Home Depot, USA, Inc., Docket No. 3:00CV1578 (D.Conn., Chatigny, J., 2003).

21

## II.    DEFENDANT'S PROPOSED JURY INSTRUCTIONS

### A.    Liberty Interest

In Count One of his Complaint, the plaintiff alleges that the defendants deprived him of a liberty interest by disseminating "defamatory and derogatory" public statements regarding his performance as a teacher.  In order to prevail on this claim, the plaintiff must prove by a preponderance of the evidence all three of the following elements:  1) the Board, or Dr. Townsley defamed the plaintiff; 2) the defamation occurred in the course of terminating the plaintiff's employment; and 3) the plaintiff suffered significant damage to his employment opportunities as the direct result of that defamation.  See Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 1161 (1976)("stigma" to reputation alone is neither liberty nor property sufficient to invoke Due Process Clause -- in order to state liberty interest claim, defamation must occur in course of termination of employment); Easton v. Sundram, 947 F.2d 1011, 1016 (2nd Cir. 1991), cert. denied, 504 U.S. 911, 112 S.Ct. 1943 (1992)("stigma plus" must be established before mere defamation will rise to the level of a constitutional deprivation); Neu v. Corcoran, 869 F.2d 662, 667 (2nd Cir.), cert. denied, 493 U.S. 816, 110 S.Ct. 66 (1989)("Defamation . . . is not a deprivation of a liberty interest unless it occurs in the course of dismissal or refusal to rehire the individual as a government employee or during termination or alteration of some other legal right or status. . . . The 'plus' is not only significant

22

damage to a person's employment opportunities but dismissal from a government job or deprivation of some other legal right or status).

The first element that the plaintiff must prove is that either the Board or Dr. Townsley defamed him. In order to establish this first element, the plaintiff is obligated to prove that one of the defendants published a statement of fact regarding the plaintiff, that the statement was false, that the defendants knew that it was false, that the communication tended to harm the reputation of the plaintiff so as to lower the plaintiff in the estimation of the community, and that the defendants were not privileged to make this statement. Restatement (Second) Torts, §§566-577, 580B.

It is important to keep in mind that the statement in question must be a statement of fact, for generally a defendant cannot be held liable for expressing a mere opinion. Daley v. Aetna Life and Casualty Co., 249 Conn. 766, 795, 734 A.2d 112, 129 (1999). Johnson v. Chesebrough-Pond's USA Co., 918 F.Supp. 543, 551-2 (D.Conn. 1996), affirmed, 104 F.3d 355 (2nd Cir. 1996) (unreported decision) ("negative" statements to recruiters by former employer after his termination that former employer "didn't fit in" and that he "could not be recommended" were matters of opinion, not false statements, and could not for the basis for an action for defamation). See also Perruccio v. Arseneault, 7 Conn.App. 389, 394, 508 A.2d 831, 834 (1986) (assertion of "dictator leadership" was not defamatory because it was an opinion); Torok v. Proof, 1993 WL 28878, at *2

23

(Conn. Super. 1993) (assertion that plaintiff was "not a good accountant" not defamatory but merely opinion).  Therefore, if you find that the alleged defamatory statement represented a statement of opinion as opposed to a false statement of objective fact, then you must find for the defendant on the plaintiff's liberty interest claim.

In addition, a public school teacher such as the plaintiff is considered a public official for defamation purposes.  Kelley v. Bonney, 221 Conn. 549, 581, 606 A.2d 693 (1992).  Therefore, for a false statement of fact about the plaintiff to be considered defamatory, the plaintiff must prove that the statement was made with actual malice. New York Times Co. v. Sullivan, 376 U.S. 254, 279-80, 84 S.Ct. 710, 726 (1964); Holbrook v. Casazza, 204 Conn. 336, 342, 528 A.2d 774 (1987), cert. denied, 484 U.S. 1006, 108 S.Ct. 699 (1988).  Actual malice requires that the statement, when made, be made with actual knowledge that it was false or with reckless disregard of whether it was false.  New York Times Co. v. Sullivan, supra, 376 U.S. at 279-80, 84 S.Ct. at 725-26; Woodcock v. Journal Publishing Co., 230 Conn. 525, 535, 646 A.2d 92 (1994), cert. denied, 513 U.S. 1149, 115 S.Ct. 1098 (1995).  A negligent misstatement of fact will not suffice; instead, the plaintiff must demonstrate that the defendants purposefully avoided the truth.  Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 692, 109 S.Ct. 2678, 2698 (1989).  Thus, if you find that the alleged defamatory statement of fact

24

was not made with actual malice, then you must find for the defendants on the plaintiff's liberty interest claim.

The second element of the plaintiff's liberty interest claim that he must establish is that the defamation occurred in the course of terminating the plaintiff's employment. That is because "[d]efamation . . . is not a deprivation of a liberty interest unless it occurs in the course of dismissal or refusal to rehire the individual as a government employee or during termination or alteration of some other legal right or status." Neu v. Corcoran, 869 F.2d 662, 667 (2nd Cir.), cert. denied, 493 U.S. 816, 110 S.Ct. 66 (1989). In other words, the defamatory statement and the dismissal from employment must be concurrent "if the [plaintiff] is to succeed upon a claim of liberty deprivation." Martz v. Incorporated Village of Valley Stream, 22 F.3d 26, 32 (2nd Cir. 1994). See also Saulpaugh v. Monroe Community Hospital, 4 F.3d 134, 144 (2nd Cir. 1993)(in order for public employees to assert cognizable violations of their liberty interest, the defamation complained of must occur "in the course of the termination of employment"); Gentile v. Wallen, 56 F.2d 193, 198 (2nd Cir. 1977)(alleged defamatory statements made after plaintiff had been terminated from employment as public school teacher amounted to "simple defamation" which does not trigger due process rights). Therefore, if you find that the plaintiff proved that the defendants made a defamatory statement, but you find that that statement did not occur in the course of dismissing the plaintiff from his

25