**UNITED STATES DISTRICT COURT**
**DISTRICT COURT**

| | |
|---|---|
| JOHN STANKO,  :  Plaintiff, | CIVIL ACTION NO. 3:01CV597(MRK) |
| v. | |
| SIMSBURY BOARD OF EDUCATION and DR. JOSEPH TOWNSLEY,  Defendants. | |
| : | MAY 27, 2004 |

**PLAINTIFF'S PRE-TRIAL BRIEF ON SPEECH**
**ON MATTERS OF PUBLIC CONCERN**

The Court has asked the parties in this matter to briefly address the issue of "public concern" and to discuss how the speech identified by the Plaintiff in his complaint either does or does not meet the criteria for First Amendment protection. This matter was also discussed in oral argument on the Defendant's motion for summary judgment, so the Plaintiff has attached hereto a transcript of that colloquy before Judge Underhill. (See, Attachment, pp. 18-33))

The threshold inquiry in any claim of First Amendment retaliation is whether the Plaintiff's speech was on matters of public concern. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, supra, at 147-148.  This is a question of law to be determined by the Court.  Id., fn7.  "As a general rule, speech on 'any matter of political, social or other concern to the community' is protected by the First Amendment." Dangler v. New York City Off Track Betting Corp., 193 F.3d 130 (2nd Cir. 1999) (internal citations omitted).  "The analysis of what constitutes a matter of public concern and what raises academic freedom concerns is of essentially the same character. . . . The principle of academic freedom

emphasizes the essentiality of free public expression of ideas." Dambrot v. Central Michigan University, 55 F.3d 1177, 1188 (6th Cir. 1995).

The Plaintiff asserts that he engaged in several instances of speech on matters of public concern. These are described in the Plaintiff's deposition as "the Shadow Box incident," in which the Plaintiff was in conflict with the Defendants over the production of a drama club production of a play (Stanko, pp. 42-44); the Plaintiff's teaching of a unit on art and censorship, involving the presentation in class of a "poem" consisting of the words "bastards suck," (Stanko, pp. 112-14); and the Plaintiff's use of the word "nigger" during a classroom exercise on the power of words (Stanko, pp. 92-95).

*"The Shadow Box incident"* occurred during the 1990-91 school year, and involved the Plaintiff's role in assisting the Simsbury High School drama club in producing a play that the students had selected. (Stanko, p. 43) The play involved themes of death and dying; the use of strong language; and sexual innuendo regarding a homosexual relationship. (Stanko, pp. 43, 46-47) The Plaintiff objected to attempts by the Defendants to edit certain portions of the play, and when production was subsequently cancelled by vote of the cast, the Plaintiff refused to comply with the Defendants' request that he not respond to news media inquiries about the reasons for the cancellation. (Stanko, pp. 52-54) The Plaintiff was interviewed by the Hartford Courant and the Hartford Advocate regarding the controversy over the play, and there was also some radio coverage of the controversy. (Id., pp. 152-54)

In comments to the media, the Plaintiff expressed the view that Simsbury High School students should be permitted to put on the play in its original form, despite its strong language and mature themes. The Plaintiff characterized the Defendants' attempts to edit the play, with its resulting cancellation, as censorship. This speech by the Plaintiff to the media, criticizing the public school

2

administration for censoring a student production, is plainly speech on a matter of public concern.

*"Bastards suck"* was a "poem" used by the Plaintiff in teaching a unit on aesthetics and censorship in the Plaintiff's poetry class. (Stanko, p. 112) The "poem" had been used by the Plaintiff every year in which he taught poetry at Simsbury High School, and was used to generate discussion about topics ranging from research and aesthetic criticism to the media and censorship, and as a point of comparison to the poetic and artistic works of Ginsberg (author of "Howl"), e.e. cummings, Picasso, and the Beatles. (Stanko, pp. 112-14) Though the Defendants contend that the Plaintiff used the words "bastards suck" to refer to school administrators, the Plaintiff categorically denies that allegation. (Townsley Affidavit, ¶8; Stanko, p. 118)

The word *"Nigger"* was used by the Plaintiff once in the classroom setting, on or about December 18, 1997, as part of an academic exercise involving the power of language and words. (Stanko, pp. 90-91, 94-95) The use of the word arose in the context of a discussion of the short story, "Two Words," by Isabel Allende. (Id., p. 91) The purpose of the exercise was to prepare students for a part of a standardized state test in which the students would have to relate personal experiences and personal issues to concepts and theories encountered in literature. (Id.; Mullane, p. 33) The technique used by the Plaintiff in the exercise was one that he had been using since he began teaching the class in 1991, and was responsive to what the Plaintiff had been asked to do by his department chairperson, Roberta Mullane. (Stanko, p. 91; Mullane, pp. 35-36)

The Plaintiff approached an African-American student in the class during the exercise and said words to the effect of "I know a word that would probably cause you to change your feelings about what's going on and try to change you in some effect; do you know what that word is?" (Id., p. 94) When the student

3

nodded, Stanko stated, from a distance of about six feet away, "The word is nigger." (Id.)  Stanko then used the word as a jumping off point for a discussion of the impact that such a word has on people who use it and people who are directly affected by it.  (Id.)

Contrary to the Defendants' assertions, Stanko did not "call" the student, or "reference" the student as being a nigger, but spoke the word as part of a discussion on the power of words.  (Id., p. 95)  The African-American student with whom he had used the word, was a high school senior, and was doing research work on a rap poet who frequently used the word "nigger" in his work.  (Id., p. 95)  Stanko and the student had previously discussed the poet's use of the word in the classroom.  (Id.)  Stanko had himself used the word on other occasions in the classroom, while reading poetry that included the word.  (Id., p. 96)  There are various works of literature that were part of the English Literature curriculum at Simsbury High School that included the word "nigger," including Huckleberry Finn, and Invisible Man, by Ralph Ellison.  (Mullane, p. 40).

Both the Plaintiff's "poem" and his use of an emotionally charged word were expressions of ideas about censorship, art and literature in the context of an academic discussion in a public school classroom.  As the Sixth Circuit points out in Dambrot, supra, the analysis of whether speech is a matter of free academic expression is of essentially the same character as the analysis of speech on matters of public concern.  The content and meaning of art and literature are no less a matter of concern to the community than criticism of public officials or speech in favor of or against a particular candidate for office.

4

Applying "public concern" analysis to the facts of this case, the Court should find as a matter of law that the Plaintiff engaged in speech on matters of public concern in three separate instances, and that each is a sufficient basis upon which the Plaintiff can premise his Section 1983 claim that the Defendants retaliated against him for his exercise of protected speech.

RESPECTFULLY SUBMITTED,
For the Plaintiff,

_____
Peter Goselin ct16074
Henry F. Murray ct17234
Livingston, Adler, Pulda,
    Meiklejohn & Kelly P.C.
557 Prospect Avenue
Hartford, CT 06105
Phone: (860) 233-9821
Fax: (860) 232-7818
pdgoselin@lapm.org
hfmurray@lapm.org

## CERTIFICATE OF SERVICE

      This hereby certifies that a copy of the foregoing Plaintiff's Pre-Trial Brief on Speech on Issues of Public Concern has been mailed first-class postage pre-paid on this 27th day of May 2004 to all counsel of record as follows:

Michael P. McKeon
Sullivan, Schoen, Campane & Connon, LLC
646 Prospect Avenue
Hartford, CT 06105

                                                                                      _____

                                                                                       Peter Goselin