# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN STANKO, | : | CIVIL ACTION NO. |
| **Plaintiff,** | : | 3:01-CV-597(MRK) |
| | : | |
| v. | : | |
| | : | |
| SIMSBURY BOARD OF EDUCATION | : | |
| AND DR. JOSEPH TOWNSLEY, | : | |
| Defendants. | : | MAY 27, 2004 |

## PLAINTIFF'S OBJECTIONS TO DEFENDANT'S PROPOSED JURY INSTRUCTIONS

### I.    PLAINTIFF'S CLAIMS

#### A.    Liberty Interest

1.    In Count One of his Complaint, the plaintiff alleges that the defendants deprived him of a liberty interest by disseminating "defamatory and derogatory" public statements regarding his performance as a teacher.  In order to prevail on this claim, the plaintiff must prove by a preponderance of the evidence all three of the following elements:  1) the Board, or Dr. Townsley *defamed the plaintiff; 2) the defamation occurred in the course of terminating the*

*plaintiff's employment;* and 3) the plaintiff suffered significant damage to his employment opportunities as the direct result of that defamation.  *See* *Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 1161 (1976)*("stigma" to reputation alone is neither liberty nor property sufficient to invoke Due Process Clause -- *in order to state liberty interest claim, defamation must occur in course of termination of employment*); Easton v. Sundram, 947 F.2d 1011, 1016 (2nd Cir. 1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943 (1992)("stigma plus" must be established before mere defamation will rise to the level of a constitutional deprivation); Neu v. Corcoran, 869 F.2d 662, 667 (2nd Cir.), *cert. denied*, 493 U.S. 816, 110 S.Ct. 66 (1989)("Defamation . . . is not a deprivation of a liberty interest unless it occurs in the course of dismissal or refusal to rehire the individual as a government employee or during termination or alteration of some other legal right or status. . . . The 'plus' is not only significant damage to a person's employment opportunities but dismissal from a government job or deprivation of some other legal right or status).

The first element that the plaintiff must prove is that either the Board or Dr. Townsley defamed him.  In order to establish this first element, the plaintiff is obligated to prove that one of the defendants published a statement of fact regarding the plaintiff, that the statement was false, that the defendants knew that it was false, that the communication tended to harm the reputation of the plaintiff so as to lower the plaintiff in the estimation of the community, and that

the defendants were not privileged to make this statement.  Restatement (Second) Torts, §§566-577, 580B.

It is important to keep in mind that the statement in question must be a statement of fact, for generally a defendant cannot be held liable for expressing a mere opinion.  <u>Daley v. Aetna Life and Casualty Co.</u>, 249 Conn. 766, 795, 734 A.2d 112, 129 (1999).  <u>Johnson v. Chesebrough-Pond's USA Co.</u>, 918 F.Supp. 543, 551-2 (D.Conn. 1996), *affirmed*, 104 F.3d 355 (2nd Cir. 1996) (unreported decision) ("negative" statements to recruiters by former employer after his termination that former employer "didn't fit in" and that he "could not be recommended" were matters of opinion, not false statements, and could not for the basis for an action for defamation).  <u>See also</u> <u>Perruccio v. Arseneault</u>, 7 Conn.App. 389, 394, 508 A.2d 831, 834 (1986) (assertion of "dictator leadership" was not defamatory because it was an opinion); <u>Torok v. Proof</u>, 1993 WL 28878, at *2 (Conn. Super. 1993) (assertion that plaintiff was "not a good accountant" not defamatory but merely opinion).  Therefore, if you find that the alleged defamatory statement represented a statement of opinion as opposed to a false statement of objective fact, then you must find for the defendant on the plaintiff's liberty interest claim.

In addition, a public school teacher such as the plaintiff is considered a public official for defamation purposes.  <u>Kelley v. Bonney</u>, 221 Conn. 549, 581, 606 A.2d 693 (1992).  Therefore, for a false statement of fact about the plaintiff to be considered defamatory, the plaintiff must

prove that the statement was made with actual malice. New York Times Co. v. Sullivan, 376 U.S. 254, 279-80, 84 S.Ct. 710, 726 (1964); Holbrook v. Casazza, 204 Conn. 336, 342, 528 A.2d 774 (1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 699 (1988). Actual malice requires that the statement, when made, be made with actual knowledge that it was false or with reckless disregard of whether it was false. New York Times Co. v. Sullivan, *supra*, 376 U.S. at 279-80, 84 S.Ct. at 725-26; Woodcock v. Journal Publishing Co., 230 Conn. 525, 535, 646 A.2d 92 (1994), *cert. denied*, 513 U.S. 1149, 115 S.Ct. 1098 (1995). A negligent misstatement of fact will not suffice; instead, the plaintiff must demonstrate that the defendants purposefully avoided the truth. Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 692, 109 S.Ct. 2678, 2698 (1989). Thus, if you find that the alleged defamatory statement of fact was not made with actual malice, then you must find for the defendants on the plaintiff's liberty interest claim.

The second element of the plaintiff's liberty interest claim that he must establish is that *the defamation occurred in the course of terminating the plaintiff's employment. That is because* "[d]efamation . . . is not a deprivation of a liberty interest unless it occurs in the course of dismissal or refusal to rehire the individual as a government employee or during termination or alteration of some other legal right or status." Neu v. Corcoran, 869 F.2d 662, 667 (2nd Cir.), *cert. denied*, 493 U.S. 816, 110 S.Ct. 66 (1989). In other words, the defamatory statement and the dismissal from employment must be concurrent "if the [plaintiff] is to succeed upon a claim

of liberty deprivation." <u>Martz v. Incorporated Village of Valley Stream</u>, 22 F.3d 26, 32 (2nd Cir. 1994).    <u>See</u> <u>also</u> <u>Saulpaugh v. Monroe Community Hospital,</u> <i>4 F.3d 134, 144 (2nd Cir. 1993)(</i>in order for public employees to assert cognizable violations of their liberty interest, the defamation complained of must occur "in the course of the termination of employment"); <u>Gentile v. Wallen</u>, 56 F.2d 193, 198 (2nd Cir. 1977)(alleged defamatory statements made <u>after</u> plaintiff had been terminated from employment as public school teacher amounted to "simple defamation" which does not trigger due process rights).   Therefore, if you find that the plaintiff proved that the defendants made a defamatory statement, but you find that that statement did not occur in the course of dismissing the plaintiff from his employment by the Board, then you must find for the defendants on the plaintiff's liberty interest claim.

The third element of the plaintiff's liberty interest claim that he must establish is that the plaintiff suffered significant damage to his employment opportunities as the direct result of an allegedly defamatory statement that was made in the course of his termination from employment. <u>See</u>, <i>e.g.,</i> <u>Paul v. Davis</u>, <i>424 U.S. 693, 701, 96 S.Ct. 1155, 1161 (1976);</i> <u>Martz v. Incorporated Village of Valley Stream</u>, 22 F.3d 26, 32 (2nd Cir. 1994).   It is not sufficient for the plaintiff to merely demonstrate that the defendants made a defamatory statement about him during the course of his dismissal and that at some subsequent date his employment opportunities were significantly impaired.   Instead, he must also prove a direct link between the statement and the adverse

employment opportunities.  In short, he is obligated to prove that the one was caused by the

other.  If you find that the plaintiff failed to establish that connection, then you must find in favor

of the defendants on the plaintiff's liberty interest claim.

*Plaintiff's Objections*

*Plaintiff objects to the defendants' instruction on the plaintiff's § 1983 liberty interest claim as overly confusing, one-sided and not likely to aid the jury in carrying out its charge.  Moreover, the plaintiff believes that the defendant's charge misstates the law to the extent that it insists that a liberty interest violation may only occur in the termination process.  The plaintiff believes that his charge on this count is clearer, more balanced, less confusing and an accurate statement of the law and the elements necessary for the claim.*

### B.  First Amendment

2.    The plaintiff alleges that the defendants retaliated against him based upon his exercise of

his right to freedom of speech as guaranteed under the First Amendment of the United States

Constitution.   In particular, the plaintiff alleges that the defendants' purportedly damaging

statements to prospective employers were in retaliation for: 1) the plaintiff's role as a faculty

advisor and director of a student production of a play entitled "Shadow Box," 2) the plaintiff's

teaching of a unit on "art and censorship," and 3) the plaintiff's use of the word "nigger" in his

classroom.

A public employee's right to freedom of speech is not absolute.  Bernheim v. Litt, 79

F.3d 318, 324 (2d Cir. 1996)(citing Waters v. Churchill, 511 U.S. ---, 116 S. Ct. 173, 133

L.Ed.2d 114 (1994)).  To presume otherwise would have the unreasonable result of transforming

virtually every remark made by a public employee into a potential constitutional claim.  <u>Connick</u>

<u>v. Myers</u>, 461 U.S. 138, 149, 103 S. Ct. 1684, 1691, 75 L.Ed.2d 708 (1983).  Instead, the

plaintiff must first establish that the speech in question related to a political, social or other

matter that would normally be considered of public concern.  <u>Bernheim v. Litt</u>, 79 F.3d at 324

(quoting <u>Gagliardi v. Village of Pawling</u>, 18 F.3d 188, 194 (2d Cir. 1994), quoting in turn <u>Brady</u>

<u>v. Town of Colchester</u>, 863 F.2d 205, 217 (2d Cir. 1988)).  <u>See also</u> <u>Watkins v. Bowden</u>, 105

F.3d 1344, 1353 (11th Cir. 1997); <u>Ezekwo v. NYC Health & Hosp. Corp.</u>, 940 F.2d 775, 780-81

(2d Cir. 1991), *cert. denied*, 502 U.S. 1013, 112 S. Ct. 657, 116 L.Ed.2d 749 91991); <u>Alba v.</u>

<u>Ansonia Bd. of Educ.</u>, 999 F. Supp. 687, 692 (D.Conn. 1998).  This is threshold legal decision

that must be made by the court. <u>Alba v. Ansonia Bd. of Educ.</u>, 999 F. Supp. at 692 (citing

<u>Ezekwo v. NYC Health & Hosp. Corp.</u>, 940 F.2d at 781).[1]

---

[1] As this threshold determination is one of law to be made by the court, the Board presumes that it will be decided by motion practice during the course of the trial.  Fed. R. Civ. P. 50.  Should the court determine that the plaintiff's alleged comments did not rise to the level of protected speech, then these proposed requests to charge are irrelevant.  Should the court decided, however, that the plaintiff's purported comments did, in fact, constitute protected speech, then the requests to charge would, obviously, be relevant in their entirety.

The first, and most obvious, determination that you as the jury must make is whether in fact the plaintiff engaged in the speech he claims to have made prior to the alleged retaliation and his discharge.  Specifically, there has been disagreement as to whether the plaintiff engaged in commentary regarding his role as a faculty advisor and director of a student production of a play entitled *Shadow Box* and as to whether the plaintiff engaged in the teaching of a unit on "art and censorship."  There is no dispute that the plaintiff used the word "nigger" in the classroom.  If, based upon all the evidence that you have heard, you determine that it is more likely than not that the plaintiff did, in fact, *not* engage in what he alleges to be commentary on *Shadow Box* and on the topic of "art and censorship," then you must find in favor of the Board on the plaintiff's First Amendment claim to the extent that it is based upon those alleged incidents.

If, however, you determine that the plaintiff did engage in the commentary that he claims, you must then consider whether, in fact, the parties who allegedly took adverse action against him were aware of them.  In other words, if based upon the evidence you have heard you

---

Consequently, the Board submits this proposed language only to protect its interests with respect to the jury charge and not as an acknowledgement that the plaintiff's alleged speech was of public concern and certainly not as a waiver of its right to challenge whether it was protected free speech.

determine that Dr. Townsley and the Board were unaware that the plaintiff had allegedly engaged in this commentary, then you must find in favor of Dr. Townsley and the Board.

If, however, you determine that the plaintiff did engage in the commentary he claims he did and that Dr. Townsley or the Board was aware of that commentary, you must then consider the following factors:

1.     Whether the plaintiff's interest in his speech outweighed the Board's interest in taking action to promote effective and efficient public service. Bernheim v. Litt, 79 F.3d at 324. See also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 284, 97 S. Ct. 568, 574, 50 L.Ed.2d 471 (1977); Pickering v. Board of Educ., 391 U.S. 563, 568, 88 S. Ct. 1731, 1734-35, 20 L.Ed.2d 811 (1968); Azzaro v. County of Alleghany, 110 F.3d 968, 976 (3rd Cir. 1997); Tindal v. Montgomery County Comm., 32 F.3d 1535, 1540 (11th Cir. 1994). And,

2.     Whether the plaintiff's speech played a substantial role in the retaliatory conduct he claims he suffered. Bernheim v. Litt, 79 F.3d at 324 (quoting Gagliardi v. Village of Pawling, 18 F.3d 188, 194 (2d Cir. 1994), quoting in turn Easton v. Sundram, 947 F.2d 1011, 1015 (2d Cir. 1991), *cert. denied*, 504 U.S. 911, 112 S. Ct. 1943, 118 L.Ed.2d 548 (1992)); Tindal v. Montgomery County Comm., 32 F.3d at 1540.

The plaintiff bears the burden of proof on both of these issues. Therefore, it is the plaintiff's obligation to prove that his interest in his speech outweighed the Board's interest in

promoting effective and efficient public service.  To assist you in this determination, it is helpful for you to remember that even though some speech may touch upon matters of public concern, it may also unreasonably disrupt the efficient conduct of government operations.  Consequently, in order to promote efficient public service, government agencies such as a board of education may take action against employees like the plaintiff who engage in such allegedly disruptive speech. Tindal v. Montgomery County Comm., 32 F.3d at 1540.  See also Azzaro v. County of Alleghany, 110 F.3d at 976; Alba v. Ansonia Bd. of Educ., 999 F. Supp. at 692 (citing Sheppard v. Beerman, 94 F.3d 823, 827 (2d Cir. 1996)).  In balancing the interest of the employee against the interest of the employer, it is helpful to consider:

    1.    Whether the statements interfered with the employee's job performance or with the overall operation of the school district.

Mazurek v. Wolcott Bd. of Educ., 815 F. Supp. 71, 75 (D. Conn. 1993)(citing in part Connick v. Meyers, 461 U.S. at 166-67).

You must also consider the fact that the law entitles public secondary school officials to prohibit the use of vulgar or offensive terms within the school setting, and that school officials have the ability to control and monitor the school's curriculum, including subjects, methodologies and plays, without offending the First Amendment.  The United States Supreme Court has acknowledged the special role of the public schools in developing the character and

citizenship of students and has noted that one of the objectives of a public school is the "inculcation of fundamental values necessary to the maintenance of a democratic political system." Bethel v. Fraser, 478 U.S. __, 681, 106 S. Ct. ___, 3163 (1986), *quoting* Ambach v. Norwick, 441 U.S. 68, 76-77, 99 S. Ct. 1589, 1594 (1979). These fundamental values of "habits and manners of civility" must not only include tolerance of divergent political and religious views, but also consideration of the sensibilities of others and teaching students the boundaries of socially appropriate behavior. Bethel v. Fraser, 478 U.S. at 681, 106 S.Ct. at 3163.

A school district is also entitled to exercise reasonable limitations on school speech "by exercising editorial control over the style and content of student speech in school sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns." Hazelwood School District v. Kuhlmeier, 484 U. S. 261, 273, 108 S.Ct. 562, 571 (1988). Consequently, a school may refuse to sponsor school speech that may be "reasonably perceived to advocate . . . conduct otherwise inconsistent with the shared values of a civilized social order" or which "associates the school with any position other than neutrality on matters of political controversy." Id. at 272, 108 S.Ct. at 570. A school district is also entitled to disassociate itself from speech that "would substantially interfere with its work and impinge upon the rights of other students" or is "ungrammatical, poorly written, inadequately researched,

biased or prejudice, vulgar or profane, or unsuitable for image or audiences." Id. at 271, 108 S.Ct. at 570.

The right to ensure that students "learn whatever lessons [an] activity is designed to teach, [and] that readers or listeners are not exposed to material that may be inappropriate for their level of maturity" is reserved for school administrators. Hazelwood v. Kuhlmeier, 484 U.S. at 271, 108 S.Ct. at 570. Additionally, school administrators are entitled to exercise authority over "expressive activities that students, parents, and members of the public might reasonably perceive to bear the imprimatur of the school." Hazelwood v. Kuhlmeier, 484 U.S. at 271, 108 S.Ct. at 570. The determination of whether their actions with respect to free expression are reasonably related to a legitimate educational concern "will depend on, among other things, the age and sophistication of the students, the relationship between teaching method and valid educational objective, and the context and manner of the presentation." Ward v. Hickey, 996 F.2d 448, 453 (1st Cir. 1993), *quoted in* Silano v. Sag Harbor Union Free School District, 42 F.3d 719, 722-3 (2nd Cir. 1994).

The school district's right to place reasonable restrictions on free expression also entitles school administrators to restrict a lecture in a traditional classroom setting. Silano v. Sag Harbor Union Free School District, 42 F.3d at 723. Therefore, if you find that the plaintiff failed to prove that his interest in engaging in his alleged speech outweighed an interest by the Board in

taking action to promote the effective and efficient operation of the Simbsbury school system, then you must find in favor of the Board.

If, however, you determine that the plaintiff *did* establish that his interest in his speech outweighed any such interest by the Board, then you must the consider whether the plaintiff's alleged speech played a substantial role in the retaliatory conduct to which he claims he was subjected.  Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S. Ct. 568, 50 L.Ed.2d 471 (1977); Tindal v. Montgomery County Comm., 32 F.3d at 1540; Alba v. Ansonia Bd. of Educ., 999 F. Supp. at 692.  In other words, the plaintiff must prove by a preponderance of the evidence not only that he suffered an adverse decision or retaliation following the alleged exercise of free speech, but also that there was a direct connection between the activity and the adverse decision.  Blum v. Schlegel, 18 F.3d 1005 (2nd Cir. 1994).  Again, the plaintiff must establish that the adverse action or alleged retaliation was substantially caused by the alleged exercise of speech.  Blum v. Schlegel, 18 F.3d at 1010.

The plaintiff also bears the burden of proof with respect to this issue.  Consequently, you must determine whether the plaintiff has proved that the retaliatory conduct he claims to have experienced was motivated by or substantially caused by his alleged exercise of free speech. Bernheim v. Litt, 79 F.3d at 324 (quoting Gagliardi v. Village of Pawling, 18 F.3d at 194 (2d Cir. 1994), quoting in turn Easton v. Sundram, 947 F.2d at 1015 (2d Cir. 1991)).  In other words,

you must decide whether either Dr. Townsley's or the Board's alleged actions were motivated by the plaintiff's alleged speech or whether they were motivated by other factors.  It is not enough for the plaintiff to prove that his alleged speech was *a* factor or *a* consideration; he must establish that the defendants' actions were "substantially caused" by her speech.  Id.  For you to determine that the plaintiff's speech "substantially caused" the defendants' action, you must find that the alleged speech was the *essential* or *main* reason for Dr. Townsley's or the Board's conduct. *Black's Law Dictionary* (6th Ed. 1990), at 1428-29.

If based upon the evidence that you heard you determine that the plaintiff's alleged speech did not substantially cause or motivate the defendants' alleged actions, then you must find in favor of the defendants.  If, however, you find that such speech did, in fact, substantially cause the retaliation claimed by the plaintiff, then you must consider one final factor:  Whether the Board has demonstrated that it would have engaged in the conduct regardless of the plaintiff's protected speech.  Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 576, 50 L.Ed.2d 471 (1977); Tindal v. Montgomery County Comm., 32 F.3d at 1540.

With respect to this particular determination, the defendants, not the plaintiff, bear the burden of proof.  Id.  Thus, if you have decided that the plaintiff has proven that his interest in speech outweighed the defendants' right to take action to promote the effective and efficient

14

operation of the Simsbury school system, and has also proven that his speech motivated or substantially caused the allegedly retaliatory conduct he claims to have experienced, then you must determine whether the defendants proved that they still would have treated him the same even if he had not 1) been involved in the "Shadow Box" controversy, 2) taught a unit in "art and censorship," and/or 3) use the word "nigger" in his classroom.  Id.

In reaching this decision, you should consider whether the defendants relied upon other factors, such as parental complaints, concerns about his judgment and treatment of students, or the plaintiff's *actions* apart from his alleged speech.  If you determine that defendants would have reached the same decisions regarding the plaintiff even in the absence of any constitutionally protected alleged speech, then you must find in favor of the defendants.  If, however, you determine that the defendants would not have reached that decision in the absence of his speech, then you may return a verdict in favor of the plaintiff.  Id.  See also Bernheim v. Litt, 79 F.3d 318, 324 (2nd Cir. 1996) (quoting Gagliardi v. Village of Pawling, 18 F.3d 188, 194 (2d Cir. 1994), quoting in turn Easton v. Sundram, 947 F.2d 1011, 1015 (2d Cir. 1991), *cert. denied*, 504 U.S. 911, 112 S. Ct. 1943 (1992))

When you begin your deliberations, you should keep in mind that the Board cannot be found liable based solely upon the actions of Dr. Townsley unless the plaintiff also proves that Dr. Townsley's actions resulted from an official Board policy, custom, ordinance, regulation, or

decision to punish employees who exercised their right to free speech.  <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658, 691-94, 92 S. Ct. 2018, 2036-37, 56 L.Ed.2d 611 (1978), *cited in* <u>Rookard v. Health and Hospita.s Corp.</u>, 710 F.2d 41, 45 (2d Cir. 1983); <u>David v. City and County of Denver</u>, 101 F.3d 1344, 1357 (10th Cir. 1996).  Therefore, even if the plaintiff proved that Dr. Townsley engaged in adverse actions against him, and that these actions were substantially caused by his alleged exercise of free speech, and that there was no other independent basis for such actions, you still cannot hold the Board liable for Dr. Townsley's conduct unless you also find that the plaintiff proved this conduct was part of a "persistent and widespread discriminatory [Board] practice."  <u>Monell v. Department of Social Servs.</u>, 436 U.S. at 691, 92 S. Ct. at 2036, *quoted in* <u>David v. City and County of Denver</u>, 101 F.3d at 1357.  The mere fact that the Board employed Dr. Townsley is not a sufficient basis for finding against the Board.

<u>*Plaintiff's Objections*</u>

*Plaintiff objects to the defendants' instruction on the plaintiff's § 1983 first amendment  claim as overly confusing, repetitive, one-sided and not likely to aid the jury in carrying out its charge.  The plaintiff believes that his charge on this count is clearer, more balanced, less confusing and an accurate statement of the law and the elements necessary for the claim.*

**C.    <u>Defamation</u>**

3.      In the Fourth Count of his Complaint, the plaintiff claims that the defendants defamed him by allegedly making false statements regarding the plaintiff's employment with the defendant and/or his separation from said employment.   As previously noted in these instructions, an action for defamation lies where: 1) a defendant publishes a communication; 2) the communication was a communication of fact; 3) the communication was concerning the plaintiff; 4) the communication was false; *and* 5) the communication tended to harm the reputation of the plaintiff so as to lower the plaintiff in the estimation of the community. Restatement (Second) Torts, §566-577.   Therefore, in order to find the defendants liable for defamation, the plaintiff must prove by a preponderance of the evidence that the defendants made *false* statements of fact that harmed the plaintiff *and* that the defendant was not privileged to do so.

If you find that the defendant published communication of fact concerning the plaintiff's employment with and separation from the defendant, that the communication was objectively false, *and* the communication was defamatory, then the plaintiff is "entitled to recover, as general damages, for the injury to his reputation and for the humiliation and mental suffering which the libel caused him."   Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 27, 662 A.2d 89 (1995).  In this case, the defendants are liable for defamation only if they

(a)     know[] that the statement is false and that it defames the other,

(b)     act[] in reckless disregard of these matters,.

3 Restatement (Second), Torts 580B.

The plaintiff cannot recover damages for defamation if the communication in question is an opinion rather than a statement of fact. In other words, the statement in question must convey an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion. Daley v. Aetna Life and Casualty Co., 249 Conn. 766, 795, 734 A.2d 112, 129 (1999). Johnson v. Chesebrough-Pond's USA Co., 918 F.Supp. 543, 551-2 (D.Conn. 1996), *affirmed*, 104 F.3d 355 (2nd Cir. 1996)(unreported decision). For example, "negative" statements to employment recruiters made by a former employer after the employee's termination that the employee "didn't fit in" and that he "could not be recommended" are matters of opinion, not false statements, and cannot be used as the basis for an action for defamation. Johnson v. Chesebrough-Pond's USA Co., 918 F.Supp. 543, 551-2 (D.Conn. 1996), *affirmed*, 104 F.3d 355 (2nd Cir. 1996)(unreported decision). Similarly, an assertion that someone's supervisor was a "dictator" is not defamatory because it is an opinion. Perruccio v. Arseneault, 7 Conn.App. 389, 394, 508 A.2d 831, 834 (1986). Also, a statement that an individual was "not a good accountant" is merely an opinion and thus does not constitute defamation. Torok v. Proof, 1993 WL 28878, at *2 (Conn. Super. 1993). Thus, if you find that the alleged defamatory statement represented a statement of opinion, as opposed to a false statement of objective fact, then you must find for the defendants.

In addition, under the law, "a public school teacher is a public official for defamation purposes." Kelley v. Bonney, 221 Conn. 549, 581, 606 A.2d 693 (1992). Consequently, the plaintiff is not entitled to recover damages for defamation unless he proves that the defamatory statement was made with actual malice. New York Times Co. v. Sullivan, 376 U.S. 254, 279-80, 84 S.Ct. 710, 726 (1964); Holbrook v. Casazza, 204 Conn. 336, 342, 528 A.2d 774 (1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 699 (1988). Actual malice requires that the statement be made with actual knowledge that it was false or with reckless disregard of whether it was false. New York Times Co. v. Sullivan, *supra*, 376 U.S. at 279-80, 84 S.Ct. at 725-26; Woodcock v. Journal Publishing Co., 230 Conn. 525, 535, 646 A.2d 92 (1994), *cert. denied*, 513 U.S. 1149, 115 S.Ct. 1098 (1995). It is not enough that the speaker negligently misstatement a fact. Instead, the plaintiff must prove by a preponderance of the evidence that the defendants purposely avoided the truth. Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 692, 109 S.Ct. 2678, 2698 (1989).

The plaintiff is also required to show malice on the part of the defendants because of the privileged nature of the communications at issue. In other words, to find a defendant liable for defamation, the plaintiff must not only prove that the defendant made false statements of fact that harmed the plaintiff, he must also establish that the defendants were not *privileged* to do so. Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 27, 662 A.2d 89 (1995).

An example of privilege is when there are communications between managers regarding an employee's job performance.  234 Conn. at 29.[2]  Although a qualified privilege insulates many defamatory statements and shields many defendants from liability, the privilege does not protect a defendant who makes statements that are both defamatory and malicious. *See, e.g.,* Id.; Bleich v. Ortiz, 196 Conn. 498, 504, 493 A.2d 236 (1985); 3 Restatement (Second), Torts § 600 (1977). See also Woodcock v. Journal Publishing Co., 230 Conn. 525, 527, 646 A.2d 92 (1994) (in suit by public figure against media defendant, finding of actual malice permissible when there is sufficient evidence to permit inference that defendant in fact entertained serious doubts as to the truth of his publication).  Thus, if you find that the defendants' statements were made without malice, then you must find for the defendants.

## *Plaintiff's Objections*

---

[2]"There are two facets to the defense of privilege.  The occasion must be one of privilege, and the privilege must not be abused.  Whether the occasion is one of privilege is a question of law." Torosyan, 234 Conn. at 28.  Although privilege is a legal question, the defendants nonetheless set it forth herein for the sake of completeness.  If it is determined by the court that a privilege does not exist, then this portion of the proposed Request to Charge is inapplicable.

*Plaintiff objections to the Defendants' instruction on the defamation count as overly confusing and one-sided. Moreover, the Defendant's instruction on actual malice is unnecessary because the plaintiff was not a schoolteacher at the time the statements were made. If, on the other hand, the Court believes that an actual malice instruction is warranted, the plaintiff's instruction on this issue is both clearer and more balanced than that proposed by the defendant.*

### D.    Breach Of Contract

4.      The plaintiff further alleges that the defendants breached that part of the February 2, 1998

separation agreement that provides:

> The Board agrees that all inquiries regarding the Teacher's employment with the Simsbury Public Schools shall be referred to the Superintendent of Schools and the Teacher agrees to waive any claims against the Board and its employees and agents arising out of the Superintendent's good faith response to any such inquiries.

Specifically, the plaintiff alleges that Dr. Townsley did not respond in good faith to inquiries

regarding the plaintiff's employment with the Simsbury Public Schools.

When determining whether the defendants breached the separation agreement, you

should consider that parties to a contract "do not ordinarily insert meaningless provision in their

agreements and, therefore, if it is reasonably possible to do so, every provision must be given

effect." Dainty Rubbish Service, Inc. v. Beacon Hill Association, Inc., 32 Conn. App. 530, 534,

630 A.2d 115 (1993). See also Mack Financial Corporation v. Crossley, 209 Conn. 163, 168-9,

550 A.2d 303 (1988); Hatcho Corporation v. Della Pietra, 195 Conn. 18, 23, 485 A.2d 1285

(1985); <u>Roby v. Connecticut General Life Insurance Company</u>, 166 Conn. 395, 402-3, 349 A.2d. 838 (1974). In other words, it is not appropriate to give weight to certain portions of the agreement while dismissing others. Instead, you should strive to read the agreement as a whole. <u>Dainty Rubbish Service, Inc. v. Beacon Hill Association, Inc.</u>, *supra*, (quoting <u>Dugan v. Grzybowski</u>, 165 Conn. 173, 179, 332 A.2d 97 (1973)). <u>See also</u> <u>Greenburg v. Greenburg</u>, 26 Conn. App. 591, 596, 602 A.2d 1056 (1992).

When seeking to determine the intent of the agreement, you should do so "from the language of the instrument and not from any intention either of the parties may have secretly entertained." <u>Sturman v. Socha</u>, 191 Conn. 1, 10, 463 A.2d 527 (1983); <u>Greenburg v. Greenburg</u>, 26 Conn. App. at 596, 602 A.2d 1056; <u>Kolkmeyer v. Kolkmeyer</u>, 18 Conn. App. 336, 340, 558 A.2d 253 (1989). <u>See also</u> <u>Sweeny v. Sweeny</u>, 9 Conn. App. 498, 500-501, 519 A.2d 1237 (1987). In other words, a party to a contract is entitled to rely upon the language of the agreement rather than be subject to the silent intent of the other contracting party. Therefore, when considering the breach of contract claim, you should be guided by what the agreement says, not what either of the parties wished or hoped it said.

The words of the agreement must be considered in their ordinary and popular meaning. <u>Lake Garda Improvement Assn. v. Battistoni</u>, 160 Conn. 503, 512, 280 A.2d 877 (1971). Furthermore, you must interpret the contract in accordance with the terms employed therein, and

you cannot disregard the words used by the parties or revise, add to, or create a new agreement."

Collins v. Sears, Roebuck & Co., 164 Conn. 369, 374, 321 A.2d 444 (1973).

The term "good faith" does not have any statutory definition.  Instead, "good faith" is an intangible quality that "encompasses, among other things, an honest belief."  *Black's Law Dictionary* (Sixth Ed. 1990), p. 693.  "Good faith" is commonly defined as "honesty."  *Webster's Ninth New Collegiate Dictionary* (1984), p. 527.  In order to establish that the defendants breached the February 1998 separation agreement, the plaintiff must prove by a preponderance of the evidence that when inquiries were made regarding the plaintiff's employment with the Simsbury Public Schools, Dr. Townsley was dishonest or sought to defraud the callers.  Therefore, if you find that Dr. Townsley honestly answered the questions that were posed regarding the plaintiff's employment with the Simsbury Public Schools, then you must find in favor of the defendants.

*Plaintiff's Objections:*

*Plaintiff objects to the defendants' instruction on the breach of contract claim as confusing and one-sided.  In addition, the defendant's instruction improperly instructs the jury to ignore any evidence adduced at trial as to the parties' intent when they entered into the agreement.*

### E.    Interference With Business Relations

5.    The plaintiff also alleges that the defendants tortiously interfered with a contract right or other business relationship that the plaintiff would have otherwise had with potential employers.  See, e.g., *Blake* v. *Levy*, 191 Conn. 257, 260, 464 A.2d 52 (1983).  Not every act or inducement that disturbs a contract or business expectancy provides a ground for a lawsuit. *Jones* v. *O'Connell*, 189

Conn. 648, 660-61, 458 A.2d 355 (1983); _Blake_ v. _Levy_, 191 Conn. at 260-61. Instead, to prevail on his claim, the plaintiff is required to prove by a preponderance of the evidence the following elements:  (1) the existence of a contractual or beneficial relationship, (2)  the defendants' knowledge of that relationship, (3) the defendants' intent to interfere with the relationship, (4) the interference was tortious, and (5) a loss suffered by the plaintiff that was caused by the defendants' tortious conduct." _Collum_ v. _Chapin_, 40 Conn. App. 449, 452, 671 A.2d 1329 (1996).  The plaintiff must establish each of these elements.  Id.

As noted, one of the elements that the plaintiff is required to establish is that the defendants' conduct was tortious.  To satisfy this requirement, the plaintiff must prove that the defendants were guilty of fraud, misrepresentation, intimidation or molestation or that the defendant acted maliciously.  _Blake_ v. _Levy_, supra, 261 (quoting _Kecko Piping Co._ v. _Monroe_, 172 Conn. 197, 201-202, 374 A.2d 179 (1977).  In other words, the plaintiff must prove some improper motive or improper means on the part of the defendants.  _Blake_ v. _Levy_, supra, 262; _Kakadelis_ v. _DeFabritis_, 191 Conn. 276, 279-80, 464 A.2d 57 (1983); see also _Sportsmen's Boating Corporation_ v. _Hensley_, 192 Conn. 747, 753, 755, 474 A.2d 780 (1984)(liability in tort imposed only if defendant acted maliciously).

The plaintiff must demonstrate malice on the part of the defendants.  Another means of stating this is that the plaintiff must prove that the defendants intentionally interfered "_without justification_" in the plaintiff's business relations.  4 Restatement (Second), Torts § 766, comment (s) (1979)(emphasis added.)  Under this requirement, the plaintiff bears the burden of proving that the defendants lacked justification for the alleged actions that the plaintiff claims interfered with his business relations.  Id.  If you find that the plaintiff has not proven that the defendants acted without justification in allegedly making statements to potential employers of the plaintiff, then you must find for the defendants.

It is also "an essential element of the tort of unlawful interference with business relations that the plaintiff suffers actual loss." _Taylor_ v. _Sugar Hollow Park, Inc.,_ 1 Conn. App. 38, 39, 467 A.2d 935 (1983).  Therefore, even were the plaintiff to prove that the defendants acted maliciously, "[t]he tort is not complete unless there has been actual damage suffered" as the direct result of the defendants' alleged actions.  _Goldman_ v. _Feinberg_, 130 Conn. 671, 675, 37 A.2d 355 (1944).  In this case, the plaintiff would be required to prove that the defendants engaged in unjustifiable conduct, and that that conduct prevented the plaintiff from obtaining a particular business opportunity.

It is not sufficient for the plaintiff to leave you to speculate or make conjecture as to whether the defendants might have acted without justification and whether such conduct interfered with the plaintiff's ability to obtain employment or some other business opportunity.  "[C]ausation must be removed from the realm of speculation and conjecture." Bar Painting , Inc. v. Greenhorne & O'Mara, Inc., 61 Conn. App. 317, 326, 763 A.2d 1078, _cert. denied_, 255 Conn.

951, 770 A.2d 31 (2001)(internal citations omitted).  In other words, the plaintiff is required to definitively prove a direct link between alleged actions of the defendants' and an actual loss.  <u>Id.</u> If you find that the plaintiff has failed to prove this direct link, then you must find in favor of the defendants.

<u>*Plaintiff's Objections*</u>

*Plaintiff objections to the Defendants' instruction on the tortuous interference claim as overly confusing, repetitive and one-sided.  Moreover, the Defendant's instruction would create the erroneous impression in a jury that it must find that the defendant committed "fraud, misrepresentation, intimidation [or] molestation" in order for the plaintiff to prevail on this claim.  Rather, the plaintiff can prevail if he shows that the defendants acted with an improper motive, which is a question of fact to be determined by the jury based on all surrounding circumstances.  The plaintiff's instruction on this claim is therefore more balanced and a clearer statement of the legal elements necessary for a verdict on the cause of action.*

**F.    Compensatory Damages**

6.      The plaintiff has requested that should the jury find that he was retaliated against as a result of exercising his free speech rights, that it award him damages.  Obviously, if you find in favor of defendants, you cannot and should not award any damages to the plaintiff.  If, however, you have found in favor of the plaintiff, then you should award him a sum of money that you believe will fairly and justly compensate him for any injury you find that he actually sustained as a direct consequence of the defendants' conduct.  <u>Vasbinder v. Ambach</u>, 926 F.2d 1333, 1342 (2d Cir. 1991).  In making this determination, you are not bound by the figure requested by the plaintiff.  You should instead be guided by your own common sense in deciding what is a reasonable amount to award the plaintiff.  You should also consider other injuries that the plaintiff has suffered that are unrelated to the defendants' actions. Additionally, the plaintiff was obligated to take reasonable steps to mitigate his damages.  Therefore, you should take into consideration whether the plaintiff did, in fact, take such steps and, if he did not, what income that he could have had he done so.

G.      **<u>Punitive Damages</u>**

7.      The plaintiff also seeks punitive damages. The plaintiff cannot maintain a claim for punitive damages against the defendants.  *See* <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 101 S. Ct. 2748 (1981).

II.      **COUNTERCLAIM**

26

### A.    Breach of Contract

8.    In addition to the plaintiff's claims against the defendants, the Simsbury Board of Education has brought a counterclaim against the plaintiff, namely that in bringing this lawsuit, the plaintiff breached the February 2, 1998 separation agreement.  Specifically, in consideration for the Board providing him with certain benefits, including but not limited to continuing him on paid leave until June 30, 1998 with full health and medical insurance and paying his health and medical insurance premiums through December 31, 1998, the plaintiff agreed "to waive any claims against the Board and its employees and agents arising out of the Superintendent's good faith response to any" inquiries regarding the plaintiff's employment with the Simsbury Public Schools.  Furthermore, the plaintiff agreed to release the defendants from "any claim arising out of the terms and conditions of the Teacher's employment with the Board, or his separation from employment, and/or any of the events relating directly or indirectly to or surrounding that employment, or his separation from that employment."

There is no dispute that the Board provided the plaintiff with the paid leave with full health and medical insurance benefits until June 30, 1998.  Furthermore, there is no dispute that the Board paid the plaintiff's health and medical insurance premiums through December 31, 1998.  Given that, the Board contends that this lawsuit constitutes a violation of his agreement to release the defendants from any claims and not to file any legal actions against the defendants.

I previously explained to you the principles that you must apply and the guidelines that you must follow in determining whether or not the defendants breached the February 1998 separation agreement. These guidelines are equally applicable in deciding whether the Board has proven by a preponderance of the evidence that the plaintiff failed to comply with his obligations in the separation agreement. If you find that the Board satisfied its evidentiary burden, then you must find in favor of the Board on the counterclaim. If the Board did not prove that the plaintiff breached the Agreement, then you must find in favor of the plaintiff.

*Plaintiff's Objections:*

*The plaintiff objects to the Defendants' instruction on its counter claim as confusing and one-sided since it appears to request the jury to follow the instruction provided on the plaintiff's breach of contract claim which the plaintiff has previously objected to as confusing, incomplete and biased. Moreover the instruction fails to set forth several important element of proof with respect to this counter claim. The plaintiff suggests the following alternative charge on the defendant's counter-claim:*

8. *In this case the defendants have a counter-claim for breach of contract against Mr. Stanko for bringing this lawsuit. Specifically the defendants claim that in his agreement with the Board the plaintiff to waive any claims against the defendants if Dr. Townsley responded to potential employment inquiries about Mr. Stank in good faith. You will not consider this counter-claim if you determine that the defendants breached their agreement with the plaintiff when Dr. Townley responded to employment inquiries about Mr. Stanko in the manner in which he did. If you find against the plaintiff on his breach of contract claim you then must determine whether the plaintiff breached his obligations under the agreement.*

*In order for the defendants to prevail on this counter-claim they must prove by a preponderance of the evidence, that the plaintiff breached his*

28

*obligations under the contract. First you must determine what the plaintiff's obligations were, under the contract, based on the written document and any other evidence you have heard regarding what the parties' intended by that contract provision. Next you must determine whether the defendants have proven that the plaintiff breached those obligations. In making those determinations you must decide whether Dr.Townley acted in good faith in responding in the manner he did and whether, at the time the plaintiff brought his law suit, he had any reasonable belief that Dr. Townley's conduct was not taken in good faith. If you find that the plaintiff had a reasonable belief that Dr. Townley had not acted in good faith you must find against the defendants on the counter-claim. If, on the other hand, you determine that the plaintiff could have had no reasonable belief that Dr. Townley had acted in bad faith at the time he initiated the lawsuit, and that his responses were in good faith, then you must find for the defendants.*

RESPECTFULLY SUBMITTED,
For the Plaintiff,

_____
Peter Goselin ct16074
Henry F. Murray ct17234
Livingston, Adler, Pulda,
Meiklejohn & Kelly P.C.
557 Prospect Avenue
Hartford, CT 06105
Phone: (860) 233-9821
Fax: (860) 232-7818
pdgoselin@lapm.org
hfmurray@lapm.org

## CERTIFICATE OF SERVICE

This hereby certifies that a copy of the foregoing Plaintiff's Objections to
Defendant's
Proposed Jury Instructions has been mailed first-class postage pre-paid on this
27th                                    day of May 2004 to
all counsel of record as follows:

Michael P. McKeon
Sullivan, Schoen, Campane & Connon, LLC
646 Prospect Avenue
Hartford, CT 06105


_____
Peter Goselin