**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JOHN STANKO, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:01-CV-597(MRK) |
| | : | |
| v. | : | |
| | : | |
| SIMSBURY BOARD OF EDUCATION | : | |
| AND DR. JOSEPH TOWNSLEY, | : | |
| Defendants. | : | MAY 28, 2004 |

**DEFENDANTS' MEMORANDUM OF LAW ON**
**PLAINTIFF'S FIRST AMENDMENT CLAIMS**

In the present matter, the plaintiff alleges that the defendants retaliated against him based upon his exercise of his right to freedom of speech as guaranteed under the First Amendment of the United States Constitution. The plaintiff predicates his claim upon the following three allegations:

30.    The Plaintiff's actions regarding the production of "Shadow Box," as described in paragraphs 9 and 10 were speech on a matter of public concern and a legitimate exercise of academic freedom.[1]

31.    The Plaintiff's actions in teaching a unit on art and censorship were speech on a matter of public concerns [sic] and a legitimate exercise of academic freedom.[2]

---

[1]Paragraphs 9 and 10 allege that the plaintiff refused to edit certain portions of *Shadow Box* that contained controversial material, that he was subsequently directed to discontinue production, and that in the following school year he "created and maintained a bulletin board in his classroom about the play and the public controversy around its production." Amended Complaint, ¶10.

[2]In his proposed jury instructions, the plaintiff specifies this allegation, writing that he "wrote on the blackboard of his classroom the words "Bastards Suck," which he identified to students in the class as a 'poem' as part of an exercise about art and censorship." Id., p. 4.

32.    The Plaintiff's use of the word "nigger" as part of a teaching exercise involved speech on a matter of public concern and was a legitimate exercise of academic freedom.

Amended Complaint, Count Two, ¶¶30-32.  As a matter of law, however, none of these instances of what the plaintiff purports to be constitutionally protected speech provide a basis for a claim under the First Amendment for they do not touch upon matters of public concern.

The United States Supreme Court has held:

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

Connick v. Myers, 461 U.S. 138, 147 (1983).  This is because "not every 'matter [] which transpire[s] within a [State institution] [is] of public concern.'" Connick, 461 U.S. at 149, *quoted in* Blum v. Schlegel, 18 F.3d 1005, 1012 (2d Cir. 1994).  To the contrary, even "the fact that an employee's speech touches on matters of public concern *will not render that speech protected* where the employee's motive for the speech is private and personal," Blum, 18 F.3d at 1012 (emphasis added).  For example, in Saulpaugh v. Monroe Comm. Hosp., 4 F.3d 134 (2d Cir. 1993), the Second Circuit rejected the plaintiff's claims that her complaints to supervisors of sexual harassment constituted matters of public concern, noting:

> In the instant case there is no indication that the plaintiff . . . sought "relief against pervasive or systemic misconduct by a public agency or public officials," or that her suit was "part of an overall effort . . . to correct allegedly unlawful practices or bring them to public attention."

2

Id., at 143 (quoting <u>Yatvin v. Madison Metro. Sch. Dist.</u>, 840 F.2d 412, 420 (7th Cir. 1988). <u>See also</u> <u>Ezekwo v. NYC Health & Hosps. Corp.</u>, 940 F.2d 775, 781 (2d Cir. 1991)("Ezekwo was not on a mission to protect the public welfare.  Rather, her primary aim was to protect her own reputation and individual development as a doctor").

In the context of school-based free speech and academic freedom claims, many courts have found that speech similar to some of which is at issue in the instant case is not protected by the First Amendment.  In <u>Dambrot v. Central Michigan University</u>, 55 F.3d 1177 (6th Cir. 1995), the Sixth Circuit held that a college basketball coach's use of the word "nigger" in a locker room session with his players was not speech upon a matter of public concern.  The court stated:

> Focusing on the "content, form and context" of Dambrot's use of the word "nigger", this Court can find nothing "relating to any matter of political, social or other concern to the community".  Dambrot's locker room speech imparted no socially or politically relevant message to his players.  The point of his speech was not related to his use of the N-word but to his desire to have his players play harder...Dambrot's use of the N-word was intended to be motivational and was incidental to the message conveyed.

Id. at 1187.  As to the coach's explanation that he used the language to call his players' attention to "enthusiasm and toughness" on the basketball court, the court stated:  "A coach's distress about the degree of aggressiveness shown by his players on the basketball court is a reasonable matter of concern, certainly, to the coach, but not the kind of question that is fairly cast as a public issue." Id. at 1187-8.

3

Similarly, in <u>Martin v. Parrish</u>, 805 F.2d 583 (5th Cir. 1986), a college instructor was terminated for inveterate use of profanity in the classroom, including "hell," "damn," "bullshit," "God damn" and "sucks." <u>Id</u>. at 584. In affirming the judgment for the defendants, the Fifth Circuit held that "There is no doubt that [plaintiff] Martin's epithets did not address a matter of public concern." <u>Id</u>. at 585. The court noted:

> The profanity described Martin's attitude towards his students, hardly a matter that, but for this lawsuit, would occasion public discussion...[Martin] has not argued that his profanity was for any purpose other than cussing out his students as an expression of frustration with their progress - to "motivate" them - and has thereby impliedly conceded his case under <u>Connick</u>.

<u>Id</u>. *But see* <u>Hardy v. Jefferson Community College</u>, 260 F.3d 671, 679 (6th Cir. 2001), *cert. denied*, 535 U.S. 970 (2002)(motion to dismiss denied, *college* instructor's use of N-word was germane to subject matter of lecture on "power and effect of language" and addressed matters of public concern, namely, "race, gender and power conflicts in our society").

The courts have likewise declined to extend First Amendment protection to a high school teacher's selection of a play to be produced by a drama class. In <u>Boring v. Buncombe County Board of Education</u>, 136 F.3d 364 (4th Cir.), *cert. denied*, 525 U.S. 813 (1998), the Fourth Circuit rejected the plaintiff-teacher's claim that her transfer to another school for selecting and producing the play *Independence* violated her free speech rights, holding that the speech did not touch upon a matter of public concern. <u>Id</u>. at 370. The court characterized the dispute over the play as "nothing more than an ordinary employment dispute," and held that the selection of the

*LAW OFFICES* • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO 62326

play did "not constitute protected speech and [had] no First Amendment protection." Id. at 369. See also Kirkland v. Northside Independent School District, 890 F.2d 794, 800 (5th Cir.1989), cert. denied, 496 U.S. 926 (1990)(a dispute over a "history reading list does not present a matter of public concern and is nothing more than an ordinary employment dispute").

In the instant case, the plaintiff's desire to produce an unexpurgated version of *Shadow Box*, and his use of the word "nigger" and the phrase "Bastard Sucks" in his classroom do not warrant First Amendment protection. Silano, 42. F3d at 722-23. Furthermore, based upon its content and context, the plaintiff's purported "speech" did not touch upon a matter of public concern. The use of "nigger" for dramatic effect or as a pedagogical device in a high school classroom cannot be said to be related to "political, social or other concern to the community." Dambrot, 55 F.3d at 1187; Martin, 805 F.2d at 585. Similarly, the use of the phrase "Bastards Suck" in the alleged context of a class unit on "art and censorship" does not touch upon matters of public concern. Kirkland, 890 F.2d at 800. Finally, the selection and production of an unedited version of *Shadow Box* also lacks a relationship to matters of public concern. Boring, 136 F.3d at 370. Therefore, since the plaintiff's speech did not touch upon a matter of public concern, it is bereft of constitutional protection.

Even were one to assume, *arguendo*, that the plaintiff's speech is somehow viewed as touching upon a matter of public concern or somehow merits protection under Connick, the plaintiff's speech is still bereft of constitutional protection as a matter of law because public

*LAW OFFICES* • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO 62326

secondary school officials may prohibit the use of vulgar or offensive terms within the school setting, and because school officials have the ability to control and monitor the school's curriculum, including subjects, methodologies and plays, without offending the First Amendment.  Thus the plaintiff cannot rely upon the doctrine of "academic freedom" to obtain constitutional protection for his use of the word "nigger" and the phrase "Bastards Suck," and his desire to produce an unexpurgated version of *Shadow Box*.

The Supreme Court has noted that teachers and students do not "shed their constitutional rights to freedom of speech ... at the schoolhouse gate."  <u>Tinker v. Des Moines Independent Community School Dist.,</u> 393 U.S. 503, 506 (1969).  At the same time, the Court also has held that public schools may limit classroom speech in order to promote educational goals.  <u>See</u>, <u>e.g.</u>, <u>Hazelwood School Dist. v. Kuhlmeier</u>, 484 U.S. 260, 266-67 (1988); <u>Tinker</u>, 393 U.S. at 506-07. Thus, the Court has held that educators may limit the content of school-sponsored speech so long as the limitations are "reasonably related to legitimate pedagogical concerns."  <u>Hazelwood</u>, 484 U.S. at 273.  In accordance with this precedent, the ultimate authority to determine "'what manner of speech in the classroom ... is inappropriate properly rests with the school board,' rather than with the federal courts."  <u>Id.</u> at 267 (quoting <u>Bethel School Dist. No. 403 v. Fraser</u>, 478 U.S. 675, 683 (1986))(internal citation omitted).

The Supreme Court has held that school officials are in the best position to ensure that their students "learn whatever lessons [an] activity is designed to teach, [and] that readers or

*LAW OFFICES* • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO 62326

listeners are not exposed to material that may be inappropriate for their level of maturity." Hazelwood, 484 U.S. at 271.  The determination of whether a school official's action is reasonably related to a legitimate pedagogical concern "will depend on, among other things, the age and sophistication of the students, the relationship between teaching method and valid educational objective, and the context and manner of the presentation."  Ward v. Hickey, 996 F.2d 448, 453 (1st Cir.1993).  See also Hazelwood, 484 U.S. at 271, 274.

Relying upon this precedent, in Silano v. Sag Harbor Union Free School District Board of Education, 42 F.3d 719 (2d Cir. 1994), the Second Circuit held that the plaintiff did not have a First Amendment right to show films in a tenth-grade classroom that contained images of partially naked women.  Id., at 722.  In determining that the school district's public censure of the plaintiff and its decision banning him from the high school for a year did not violate his First Amendment rights, the court held:

> Given that Silano's lecture took place in a traditional classroom setting and was designed to impart particular knowledge to the student participants, we conclude that the "legitimate pedagogical concern" test of Hazelwood is the appropriate measure of the school administration's authority to restrict Silano's speech.

42 F.3d at 723.  And, applying that Hazelwood standard, the Second Circuit held that

> the undisputed facts show that the actions of the Sag Harbor school officials were reasonably related to legitimate pedagogical concerns.  Silano received permission to lecture the tenth-grade mathematics classes on the "persistence of vision."  Depictions of bare-chested women were entirely unnecessary to illustrate this scientific phenomenon.

Id.

7

As in <u>Silano</u>, there is no evidence that the plaintiff's writing of the phrase "Bastards Suck" on the board of his high school classroom was a requisite or necessary component of the curriculum, even were one to accept, *arguendo*, the plaintiff's claim that it was part of a lesson on art and censorship. Similarly, there is nothing to support the plaintiff's claim that his use of the word "nigger" directly to the only black student in his class was a requisite or necessary "means of inviting discussion about the power of words." Plaintiff's Proposed Jury Instructions, p. 4. Slapping a self-serving pedagogical label such as "the power of words" or "art and censorship" upon any obscenity, however offensive, and upon any ethnic slur, however individualized and painful to his students, does not transmute patently inappropriate comments into constitutionally protected free speech.

In any event, "an employee cannot transform a personal conflict into an issue of public concern simply by arguing that individual concerns might have been of interest to the public under different circumstances." <u>Dodds v. Childers</u>, 933 F.2d 271, 273 (5th Cir. 1991). As the Fifth Circuit stated in <u>Dodds</u>:

> To rise to the level of public concern, the speech must have been made primarily as a citizen rather than as an employee. The court may therefore be required to assess the primary motivation of the speaker in evaluating whether her speech addresses a matter of public concern.

<u>Id</u>. The court further noted: "All speech arising from "mixed motives", however, is not automatically protected; the speaker must have spoken *predominantly* "as a citizen" to trigger

8

First Amendment protection." Id. at 274.  See also Coyne v. City of Somerville, 972 F.2d 440 (1st Cir. 1992); Maples v. Martin, 858 F.2d 1546, 1553, n. 12 (11th Cir. 1988).  ("[P]laintiffs should not be allowed to 'bootstrap' a personal grievance into an issue of public concern by general reference to 'popular interest in the way public institutions are run.'"); Alba v. Ansonia Board of Education, 999 F.Supp. 687, 693 (D.Conn. 1998) (teacher's speech about non-renewal of his employment not protected; primary aim of speech was personal betterment, not to implicate system-wide problem with administration of education or raise social or political issues of interest to the community).

> With respect to *Shadow Box*:
>
> The Supreme Court has stated that school activities that "are supervised by faculty members and designed to impart particular knowledge or skills to student participants" should be considered curriculum.

Silano, 42 F.3d at 723 (quoting Hazelwood, 484 U.S. at 271).  Thus, the plaintiff's dispute with the administration over the editing of a play replete with profanity and explicit references to sexually inappropriate activities is susceptible to the same Hazelwood standard as his use of "Bastard Sucks" and "nigger" in the classroom.  It is undisputed that the ultimate authority to determine "'what manner of speech in the classroom . . . is inappropriate properly rests with the school board,' rather than with the federal courts." Id. at 267 (quoting Bethel School Dist. No. 403 v. Fraser, 478 U.S. 675, 683 (1986)).  And, although this production would not have been confined to a classroom, certainly the plaintiff cannot establish that the school district's refusal to

*LAW OFFICES* • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO  62326

permit the use of words such as "fuck" and "cocksucker" in a production that would have been

performed at Simsbury High School to an audience comprised in large part students and family

members of all ages, under the aegis and with the imprimatur of the Simsbury Board of

Education, was not "reasonably related to legitimate pedagogical concerns." Hazelwood, 484

U.S. at 273.

After all, the Supreme Court has noted that one of the objectives of a public school is the

"'inculcation of fundamental values necessary to the maintenance of a democratic political

system.'" Bethel, 478 U.S. at 681 (quoting Ambach v. Norwick, 441 U.S. 68, 76-77 (1979)).

The Court stated:

> Surely, it is a highly appropriate function of public school education to prohibit
> the use of vulgar and offensive terms in public discourse.  Indeed, the
> "fundamental values necessary for the maintenance of a democratic political
> system" disfavor the use of terms of debate highly offensive or highly threatening
> to others.  Nothing in the Constitution prohibits the states from insisting that
> certain modes of expression are inappropriate and subject to sanctions.  The
> inculcation of these values is truly the "work of the schools." ... The determination
> of what manner of speech in the classroom or in school assembly is inappropriate
> properly rests with the school board...The process of educating our youth for
> citizenship in public schools is not confined to books, the curriculum, and the
> civics class; schools must teach by example the shared values of a civilized social
> order.  Consciously or otherwise, teachers - and indeed the older students -
> demonstrate the appropriate form of civil discourse and political expression by
> their conduct and deportment in and out of class.  Inescapably, like parents, they
> are role models.  The schools, as instruments of the state, may determine that the
> essential lessons of civil, mature conduct cannot be conveyed in a school that
> tolerates lewd, indecent, or offensive speech and conduct such as that indulged in
> by the [plaintiff].

LAW OFFICES • SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO  62326

Id. at 683.

Furthermore, in Hazelwood, the Court held that school administrators may exercise prior restraint over a school sponsored student publication, noting that a school sponsored newspaper bears the imprimatur of the school district, could be considered to be part of the curriculum of the school and is not a public forum for discussion. Id. at 267-70. As the Court explained, "educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns." Id. at 273. Additionally, a school district may disassociate itself from speech that "would substantially interfere with its work and impinge upon the rights of other students" or is "ungrammatical, poorly written, inadequately researched, biased or prejudice, vulgar or profane, or unsuitable for image or audiences." Id. at 271.

The Supreme Court has recognized that school administrators may exercise authority over "expressive activities that students, parents, and members of the public might reasonably perceive to bear the imprimatur of the school." Hazelwood, 484 U.S. at 271. Consistent with Bethel and Hazelwood, the courts have permitted school districts to restrict inappropriate speech by educators in the public elementary and secondary schools. See, e.g., Silano, 42 F.3d at 722-23; Martin, 805 F.2d 585. After all, it would be unreasonable to find that while a student's use of "lewd innuendo" did not warrant First Amendment protection under Bethel, a teacher's use of

LAW OFFICES  •  SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC  •  646 PROSPECT AVENUE  •  HARTFORD, CONNECTICUT 06105-4286  •  (860) 233-2141
JURIS NO  62326

inappropriate language was constitutionally protected.  See Lefevre v. McDowell, Civil Action

3:96CV02021(AVC) (D. Conn. 1997) (coach whose contract was non-renewed due to use of "F-

word" during pre-game speech to players failed to state First Amendment claim in light of lack

of public concern *and* ability of school to regulate discourse in light of Bethel v. Fraser).

As noted, in Kirkland v. Northside Independent School District, 890 F.2d 794 (5th

Cir.1989), *cert. denied*, 496 U.S. 926 (1990), the Fifth Circuit decided that the selection of the

reading list by the teacher did not implicate academic freedom, for while "the concept of

academic freedom has been recognized in our jurisprudence, the doctrine has never conferred

upon teachers the control of public school curricula."  Id. at 800.  The court held that "public

school teachers are not free, under the first amendment, to arrogate control of curricula" and

concluded that "Kirkland's conduct in disregarding [the school's] administrative process does not

constitute protected speech...."  Id.  See also Bishop v. Aronov, 926 F.2d 1066 (11th Cir. 1991)

(rejecting claim that First Amendment protects teacher's right to inject religious advocacy into

the classroom); Webster v. New Lenox School District No. 122, 917 F.2d 1004, 1007 (7th Cir.

1990) (First Amendment "is not a teacher license for uncontrolled expression at variance with

established curricular content"); Lovelace v. Southeastern Massachusetts University., 793 F.2d

419, 426 (1st Cir. 1986) ("First Amendment does not require that each non-tenured professor be

made a sovereign unto himself" with respect to course content); Hetrick v. Martin, 480 F.2d 705

(6th Cir. 1973) (First Amendment not violated when school refused to rehire teacher because of

12

her teaching philosophy, which included telling class that she was an unwed mother); Peloza v. Capistrano Unified School District, 782 F. Supp. 1412, 1416 (C.D. Cal. 1992) (First Amendment does not entitle public school teacher to teach theories of his own choosing).

Similarly, a high school teacher's selection of a play to be produced by a drama class has also been held not to constitute a matter of public concern, the Fourth Circuit holding in Boring v. Buncombe County Board of Education, 136 F.3d 364 (4th Cir.), *cert. denied*, 525 U.S. 813 (1998) that the teacher had "no First Amendment right to insist on the makeup of the curriculum ... [and] that the school administration [had] a legitimate pedagogical interest" in the makeup of such curriculum, which includes performances by the advanced drama class.    Id. at 370. Consequently, the selection of the play did "not constitute protected speech and [had] no First Amendment protection." Id. at 369.  In reaching this conclusion, the Fourth Circuit relied upon the reasoning in Kirkland.  Id.  See also Cockrel v. Shelby County School District, 81 F.Supp.2d 771, 775 (E.D.Ky. 2000) (teacher's selection of industrial hemp and the presentation of same as part of class "is much like the actions of the plaintiffs in Kirkland and Boring" and does not constitute protected "free speech").

In short, the plaintiff's alleged bases for his free speech claims do not warrant constitutional protection under the First Amendment.  Consequently, the plaintiff has failed as a matter of law to state a claim under the First Amendment, and his free speech claims cannot go to the jury.

13

THE DEFENDANTS,
SIMSBURY BOARD OF EDUCATION AND DR.
JOSEPH TOWNSLEY


Michael P. McKeon (ct02290)
Sullivan, Schoen, Campane & Connon, LLC
646 Prospect Avenue
Hartford, Connecticut  06105
Telephone:  (860) 233-2141
Facsimile: : (860)-233-0516
mmckeon@sscc-law.com

14

## **CERTIFICATION**

This is to certify that a copy of the foregoing Defendants' Memorandum of Law on Plaintiff's First Amendment Claims was hand delivered on this 28th day of May 2004 to Peter D. Goselin, Esq., Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C., 557 Prospect Avenue, Hartford, Connecticut 06105-2922.

Michael P. McKeon

15

*LAW OFFICES* • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO 62326